[Crim. No. 32577. Second Dist., Div. Three. Nov. 30, 1978.]

THE PEOPLE, Plaintiff and Appellant, v.
JOSEPH ANTUNEZ HERNANDEZ et al.,
Defendants and Respondents.

## COUNSEL

Stanley M. Roden, District Attorney, and Joel A. Ungar, Deputy District Attorney, for Plaintiff and Appellant.

Franklin S. Michaelson, under appointment by the Court of Appeal, Glen Mowrer, Jr., Public Defender, and William L. Duval, Deputy Public Defender, for Defendants and Respondents.

## OPINION

**COBEY, Acting P. J.**—The People appeal from an order setting aside count one of the information which alleged that defendants violated Penal Code section 4573[1] by "knowingly assist[ing] in bringing marijuana into the Santa Barbara County Honor Farm grounds."[2] The trial court set aside count one on the ground that defendants had been committed without reasonable or probable cause. (Pen. Code, § 995.) The appeal lies. (Pen. Code, § 1238, subd. (a)(1).)[3]

[1]Penal Code section 4573 provides: "Except when otherwise authorized by law, or when authorized by the person in charge of the prison or other institution referred to in this section or by an officer of the institution empowered by the person in charge of the institution to give such authorization, any person, who knowingly brings or sends into, or knowingly assists in bringing into, or sending into, any state prison, prison road camp, prison forestry camp, or other prison camp or prison farm or any other place where prisoners of the state are located under the custody of prison officials, officers or employees, or into any county, city and county, or city jail, road camp, farm or other place where prisoners or inmates are located under custody of any sheriff, chief of police, peace officer, probation officer or employees, or within the grounds belonging to any such institution, any narcotic, the possession of which is prohibited by Division 10 (commencing with Section 11000) of the Health and Safety Code, any device, contrivance, instrument or paraphernalia intended to be used for unlawfully injecting or consuming a narcotic, or any alcoholic beverage, is guilty of a felony."

[2]The trial court initially refused to set aside count two which alleged that defendants conspired to give away, to transport, and to attempt to transport marijuana. (Pen. Code, § 182, subd. (1); Health & Saf. Code, § 11360, subd. (b).) The trial court subsequently granted "the 995 Penal Code motion . . . as to Count 2" and the People did not then object to the court's ruling. Furthermore, no appeal has been taken therefrom.

[3]The court's minute order and the notice of appeal indicate that count one was dismissed pursuant to Penal Code section 995. Because Penal Code section 995 authorizes the court to "set aside" an information rather than to dismiss an action, we conclude that the People appealed from the order pursuant to Penal Code section 1238, subdivision (a)(1) (which authorizes their taking an appeal from "[a]n order setting aside the . . . information . . ."), rather than pursuant to Penal Code section 1238, subdivision (a)(8) (which authorizes their taking an appeal from "[a]n order or judgment dismissing or otherwise terminating the action . . .").

The People contend that defendants violated said Penal Code section 4573 because (1) they assisted in sending marijuana into an honor farm by causing it to be deposited outside the honor farm and (2) they sent marijuana to a place where inmates "are located" within the meaning of Penal Code section 4573.

We have examined these contentions and conclude that both are meritless. Consequently we will affirm the trial court's order setting aside the count alleging that defendants violated Penal Code section 4573.

FACTS[4]

Sandra visited Joseph, an inmate of the Santa Barbara County Jail Honor Farm, on four days in May 1977.[5] During their visits, Joseph suggested that Sandra leave an item outside the methadone clinic, near the palm trees, on the grass.[6] Although neither Sandra nor Joseph specifically mentioned marijuana, their conversations clearly suggest that the "item" was a narcotic. During one conversation, Sandra advised Joseph "It's a white bag."

After visiting Joseph on Sunday, May 15, 1977, Sandra drove from the honor farm to the area surrounding the methadone clinic and stopped the car. A child got out of the car and placed a white item at the base of a palm tree near the clinic. Detective George, a deputy sheriff, personally retrieved the item, a paper sack, as soon as Sandra's vehicle left the vicinity. The white sack contained nine grams of marijuana. The site where the officer found the sack containing marijuana is outside the honor farm. It is approximately 500 yards from its fence.

---

[4]Throughout this discussion we will refer to defendant Sandra Hernandez as "Sandra," and to defendant Joseph Hernandez as "Joseph."

[5]A deputy sheriff made clandestine tape recordings of Sandra and Joseph's conversations.

[6]From April through July 1977, five honor farm inmates maintained the area surrounding the methadone clinic on Monday, Tuesday and Friday mornings. The inmates worked under the custody of a parks department employee who is a special deputy of the sheriff's department.

Joseph, who was assigned to the kitchen crew during the entire month of May 1977, would not have had any opportunity to go to the area surrounding the methadone clinic. Inmates who were assigned to maintain that area mingled freely with other honor farm inmates.

## Discussion

■ A court must set aside an information upon defendant's motion if the defendant has been committed without reasonable or probable cause. (Pen. Code, § 995.) Such reasonable or probable cause exists if there is sufficient proof to make it reasonable to believe that an offense has been committed and that the defendant is guilty of the offense charged. (*Caughlin* v. *Superior Court* (1971) 4 Cal.3d 461, 464 [93 Cal.Rptr. 587, 482 P.2d 211].)

The trial court found that there was insufficient evidence to support a finding that defendants violated Penal Code section 4573 which prohibits any person from knowingly bringing or sending any narcotic, the possession of which is prohibited by division 10 of the Health and Safety Code[7] into any county jail, farm or any other place where inmates are located under the custody of any sheriff, etc., unless such conduct is otherwise authorized by law.

1. *Defendants attempted to send marijuana into the honor farm by depositing it in a location accessible to honor farm inmates, but the officer's interception of the marijuana prevented defendants from successfully sending it into the honor farm itself.*

■ When the trial court suggested that defendants' conduct constituted an attempt to send marijuana into the honor farm but that the People had failed to allege an attempt, the People argued that section 4573 "makes it a crime to attempt to do it." The People argue on appeal that by amending the statute to prohibit persons from "assisting" in sending or bringing contraband into penal institutions, the Legislature clearly intended to prohibit efforts of inmates or others to send contraband into such institutions. While we agree that the Legislature clearly intended to prohibit these efforts, we cannot conclude that "assisting" is synonymous with "attempting." Furthermore, the People's argument ignores the Legislature's express intention to punish attempts differently from successful crimes. (Pen. Code, § 664.)

■ When the detective intercepted the marijuana outside the honor farm, he prevented defendants from sending it into the honor farm. The Legislature enacted Penal Code section 664 to provide for the punishment of "[e]very person who attempts to commit any crime, but fails, or is

---

[7]Division 10 of the Health and Safety Code prohibits the possession of marijuana. (See Health & Saf. Code, §§ 11032, 11054, subd. (d)(10), and 11357, subd. (b).)

prevented or intercepted in the perpetration thereof, . . ." Because defendants failed to send marijuana into the honor farm the trial court correctly concluded that there was insufficient proof to support a finding that they sent marijuana into the honor farm in violation of Penal Code section 4573.

Another division of this court held that by placing drugs in the mail in Los Angeles, a defendant "brought" drugs into a state prison in Chino, California, in violation of Penal Code section 4573.5. (*People* v. *Waid* (1954) 127 Cal.App.2d 614, 617-618 [274 P.2d 217].) Because the package arrived at a state prison outside Los Angeles County, Waid claimed that the offense was consummated outside that county and that the Los Angeles County Superior Court lacked jurisdiction to proceed. In holding that Waid completed the act of bringing drugs into the prison when he placed them in the mail in Los Angeles, the court stressed that Waid "knew that by his delivering them to the United States Mail service, the most dependable agency available, and prepaying their cost of transportation, they would be more nearly certain of arriving at the cell of his addressee than if he had undertaken to import them." (*Id.,* at p. 618.) The mode of delivery used by defendants in the instant case contrasts markedly with the dependable mode Waid selected. Defendants' statements reveal their concern that the marijuana might either be sighted and retrieved by officials or float away from the place outside the honor farm where they intended to deposit it. Furthermore, Waid's package actually arrived at the prison in Chino, unlike the marijuana in the instant case which never reached the honor farm. Consequently we cannot hold that defendants completed the act of sending marijuana into the honor farm by causing it to be deposited outside that facility.[8]

2. *Defendants failed to send the marijuana to "a place where inmates are located" within the meaning of Penal Code section 4573.*

The People further contend that because inmates regularly occupied the place where Sandra's passenger deposited the marijuana, defendants' acts violated Penal Code section 4573's prohibition against sending marijuana into "any county, city and county, or city jail, road camp, farm, or other place where . . . inmates are located under custody of any sheriff . . . ." Defendants argue that the term "other place" must be construed to embrace only other penal institutions.

---

[8]In this connection we note that, as originally enacted, section 4573 prohibited bringing narcotics onto the grounds belonging to the institutions designated therein "or within the grounds adjacent to any such institutions." In 1949 the Legislature deleted the language "or adjacent to." (Stats. 1949, ch. 833, § 1, p. 1582.)

To resolve this dispute we must decide the meaning of the term "other place" in the context in which it is used. Because this term is here used ambiguously, we may resort to rules of statutory construction to ascertain its meaning as used. (See *In re Marquez* (1935) 3 Cal.2d 625, 628-629 [45 P.2d 342]; 2A Sutherland, Statutory Construction (4th ed. 1973) § 47.16, p. 101.) ■ The rule of construction known as *ejusdem generis,* which is particularly applicable to criminal statutes, provides that where general words follow specific words in an enumeration, the general words are construed to embrace things similar in nature to those things enumerated by the preceding specific words.[9] (*People* v. *Thomas* (1945) 25 Cal.2d 880, 899 [156 P.2d 7]; *People* v. *McKean* (1925) 76 Cal.App. 114, 119 [243 P. 898]; 2A Sutherland, *op. cit., supra,* § 47.17, p. 103.)

*Ejusdem generis* applies under the following circumstances: A statute contains an enumeration by specific words; the members of the enumeration constitute a class; the class is not exhausted by the enumeration; a general reference supplements the enumeration, usually following it; and there is no clearly manifested intent that the general term be given a broader meaning than the rule requires. (2A Sutherland, *op. cit., supra,* § 47.18, p. 109.) Section 4573 enumerates things by specific words such as prison, prison farm and city jail. The enumerated things are members of the class of penal institutions. The class is not exhausted by the enumeration because certain penal institutions, such as the Deuel Vocational Institution established by Penal Code section 2035, are not specifically enumerated. The general reference "other place" supplements the enumeration and there is no clearly manifested intent that this general term be given a meaning broader than membership in the class enumerated.[10]

Hence, according to the *ejusdem generis* rule of construction the term "other place" must be construed to embrace only those penal institutions not otherwise enumerated within Penal Code section 4573. Although the place where Sandra's passenger left the marijuana was regularly occupied by inmates on Monday, Tuesday and Friday mornings, it certainly does not constitute a penal institution and is, therefore, not an "other place

---

[9]The rule, "often called Lord Tenterden's Rule, is of ancient vintage, going back to Archbishop of Canterbury's Case, 2 Co Rep 46a, 76 Eng Rep 519 (1596)." (2A Sutherland, *op. cit., supra,* § 47.17, pp. 103-104, fn. 1.)

[10]The Legislature's aforementioned deletion of the language which formerly prohibited bringing narcotics into the grounds adjacent to the enumerated institutions (see fn. 6, *ante*) supports the conclusion that the Legislature did not intend the term "other place" to be given a broad meaning.

where . . . inmates are located under custody" within the meaning of Penal Code section 4573. Consequently we hold that the trial court correctly ruled that defendants did not complete the crime therein proscribed by causing marijuana to be deposited at a location outside the honor farm.

## DISPOSITION

The order dismissing count one is affirmed.[11]

Allport, J., and Potter, J., concurred.

---

[11]Our decision to affirm the order setting aside count one of the information should not, in and of itself, preclude the People from filing another information alleging that defendants conspired to, or attempted to, send marijuana into the honor farm. (Pen. Code, § 999. Cf. Pen. Code, §§ 1238, subd. (b), and 1387, which bar the prosecution from refiling charges against defendants under different circumstances.)