[No. A021042. First Dist., Div. One. Apr. 25, 1985.]

CITY OF VALLEJO, Plaintiff and Respondent, v.
ADULT BOOKS et al., Defendants and Appellants.

COUNSEL

Wells & Shiffman and Arthur Wells, Jr., for Defendants and Appellants.

John M. Powers, City Attorney, and Michael H. Roush, Assistant City Attorney, for Plaintiff and Respondent.

OPINION

NEWSOM, J.—Since at least July 1, 1976, appellants have conducted a business of selling adult books and showing adult movies at 540 Georgia Street, Vallejo, California.[1]

In February of 1978, respondent city council, perceiving an "adverse impact" upon the city from "adult bookstores" and "adult theatres" (Val-

---

[1]While a number of appellants have joined in this appeal, we will hereafter refer to the appealing parties in the singular to describe the business affected by one ordinance here under scrutiny.

lejo Mun. Code, § 16.57.020 Q), enacted ordinance No. 411 1 V.C. (2d), hereafter the ordinance, which provides that such establishments, defined elsewhere in the ordinances, can be located only in three zoning districts: Linear Commercial Districts (C-L); Pedestrian Shopping and Service Districts (C-P); and Intensive Use Districts (I-V). The ordinance also directs that no "adult bookstore" or "adult theatre" may be located within 500 feet of a residential zone, park, playground, library or school, or within 1,000 feet of another such business.

Additionally, as originally enacted the ordinance required adult bookstores and adult theatres to obtain conditional use permits, obtainable only upon a showing that the business was "compatible with adjacent uses" and consistent with the city's general plan. After trial of this action, respondent amended the ordinance to eliminate the permit requirement. (Vallejo Mun. Ord. No. 693 N.C. (2d).)

The ordinance requires "adult bookstores" and "adult theatres" in operation as of its effective date to comply with the new zoning provisions within one year, but allowed the city's planning commission to grant a one-year extension upon a showing of extreme hardship.

Appellant's business location is both within 500 feet of a residential zone and 1,000 feet of another "adult bookstore," Bachelor Books.[2] Appellant has neither brought an action to contest the ordinance nor sought a zoning variance. Nevertheless, appellant admits for purposes of testing the constitutional validity of the ordinance that they "meet the definition of 'adult' use set out in the (ordinance)."

At trial, appellant offered the testimony of John Flanders, a real estate broker and qualified expert on commercial property, who conducted a survey to determine locations for adult bookstores and adult theatres which are both legal under the ordinance and economically feasible. According to Flanders, the three-block downtown area, although zoned C-P and containing a few available sites, cannot accommodate appellant's business due to the presence of another adult bookstore, Bachelor Books, within 100 feet of all other downtown businesses.

In the remaining districts zoned to accommodate appellant's enterprise under the ordinance, Flanders found a number of legally available sites in south and northwest Vallejo. But in Flanders' opinion, none of these loca-

---

[2]Bachelor Books and Funville Amusement Theatre and Bookshop are appellants in another action before this division (AO14416) in which the ordinance is challenged on constitutional grounds.

tions would be economically suitable for use as an adult theatre or adult bookstore. Each of the legally available sites was, according to Flanders, either unavailable for rental, without sufficient pedestrian traffic to attract customers, or lacking a building suited to appellant's business. Flanders also testified that it would not be economically feasible for an adult theatre or adult bookstore to purchase a vacant lot and construct its own building in compliance with the Vallejo building code.

On the other hand, a number of legally available and vacant sites in the Larwin Plaza Shopping Center, Vallejo Industrial Park, and the downtown area were suggested by respondent. While the evidence indicates that the owners of many legal sites, such as in the Larwin Plaza Shopping Center, would not rent space to an adult bookstore or adult theatre, other permissible locations were not, at least according to our review of the record, established as unavailable or unsuitable for adult uses.

Appellant has challenged the constitutionality of the ordinance on grounds that it is vague and violative of the First Amendment. Appeal has been taken from a judgment of the trial court upholding the constitutionality of the ordinance.

 Appellant complains that the ordinance is unconstitutionally vague. The new zoning provisions apply to "adult bookstores" and "adult theatres," terms which appellant argues are not defined with sufficient certainty in the ordinance.

The ordinance, in section 16.04.011 of the Vallejo Zoning Code, defines "adult bookstore" as follows: " 'Adult bookstore' means any commercial establishment that has twenty-five percent or more of its stock in books, magazines, photographs, drawings, motion pictures, films or other visual representations which describe or depict sexual intercourse, homosexual acts, masturbation, fellatio, cunnilingus, bestiality, sodomy, sadomasochistic abuse or other sexual excitement or sexual conduct. (Ord. 558 N.C. (2d) Sec. 2 (part), 1980."

An "adult theatre" is defined in section 16.04.12 as "any establishment which shows or provides for a fee, films, twenty-five percent or more of the number of which show any of the acts described in section 16.04.011. This includes any video tape system which displays on a viewer, screen, or television set. This section includes any motel which provides any such films, video tape, cartridges, or other viewing system for the use of guests or customers in individual rooms, or otherwise."

Respondent contends that appellants, having admitted that their business falls within the definitions of "adult bookstore" and "adult theatre," lack standing to challenge the ordinance on vagueness grounds.

■ It is the rule that a litigant whose conduct is precisely proscribed by a statute has no standing to argue that the law is vague as applied to others. (*Basiardanes* v. *City of Galveston* (5th Cir. 1982) 682 F.2d 1203, 1210; *Duffy* v. *State Bd. of Equalization* (1984) 152 Cal.App.3d 1156, 1171 [199 Cal.Rptr. 886]; *Gates* v. *Municipal Court* (1982) 135 Cal.App.3d 309, 312-313 [185 Cal.Rptr. 330].) As noted in *In re Cregler* (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305], "one will not be heard to attack a statute on grounds that are not shown to be applicable to himself and . . . a court will not consider every conceivable situation which might arise under the language of the statute and will not consider the question of constitutionality with reference to hypothetical situations." (See also *Gates, supra,* 135 Cal.App.3d at pp. 312-313.)

An exception is recognized if the statute "may cause persons not before the Court to refrain from engaging in constitutionally protected speech or expression." (*Young* v. *American Mini Theatres* (1976) 427 U.S. 50, 60 [49 L.Ed.2d 310, 320, 96 S.Ct. 2440]; see also *Ghafari* v. *Municipal Court* (1978) 87 Cal.App.3d 255, 263 [150 Cal.Rptr. 813, 2 A.L.R.4th 1230].) The First Amendment standing exception applies only if the statute's deterrent effect on legitimate expression is " 'both real and substantial,' " and if the statute is not " 'readily subject to a narrowing construction by the state courts.' " (*Young, supra,* 427 U.S. at p. 60 [49 L.Ed.2d at p. 320]; see also *Erznoznik* v. *City of Jacksonville* (1975) 422 U.S. 205, 216 [45 L.Ed.2d 125, 135, 95 S.Ct. 2268]; *Purple Onion, Inc.* v. *Jackson* (N.D.Ga. 1981) 511 F.Supp. 1207, 1218.)

■ The language of the ordinance which appellant challenges is the phrase "other sexual excitement or sexual conduct." Appellant maintains that such language, used together with other specifically identified sexual acts to describe the nature of "visual representations" which, if found to comprise 25 percent or more of a merchant's stock, qualifies the business as an "adult bookstore" or "adult theatre" under the ordinance, is impermissibly vague.

In *Young,* a vagueness challenge was made to ordinances which classified a theatre as "adult" if it presented " 'material distinguished or characterized by an emphasis on matter depicting, describing or relating to "Specified Sexual Activities" or "Specified Anatomical Areas" [as specifically defined elsewhere in the law].' " (*Id.,* 427 U.S. at p. 53 [49 L.Ed.2d at p. 316].) The court found that the phrase "characterized by an emphasis" on sexually

explicit activities would not have a sufficient deterrent effect upon the exercise of protected expression to permit a party plainly falling within the coverage of the ordinances to assert a vagueness challenge. The court explained: "For most films the question will be readily answerable; to the extent that an area of doubt exists, we see no reason why the ordinances are not 'readily subject to a narrowing construction by the state courts.' Since there is surely a less vital interest in the uninhibited exhibition of material that is on the borderline between pornography and artistic expression than in the free dissemination of ideas of social and political significance, and since the limited amount of uncertainty in the ordinances is easily susceptible of a narrowing construction, we think this is an inappropriate case in which to adjudicate the hypothetical claims of persons not before the Court." (*Id.*, at p. 61 [49 L.Ed.2d at p. 320].)

While the phrase "other sexual excitement and sexual conduct" similarly lacks specificity, we do not find it so inherently vague as to pose a "real and substantial" threat to the free exercise of First Amendment rights. As in *Young*, most books and films will either clearly fall within the scope of the ordinance or not. Examples of "sexual excitement or sexual conduct" are specifically enumerated in the ordinance, providing guidelines which can be used to construe the more general language of the law. (*People* v. *Hernandez* (1978) 90 Cal.App.3d 309, 315 [155 Cal.Rptr. 1].) And any remaining ambiguity can, in our view, be readily clarified by a "narrowing construction" in the state courts without insuperable difficulty.

We perceive other ambiguities in the ordinance. For instance, a theatre showing films "twenty five percent or more of the number of which" depict sexual conduct, qualifies as an "adult theatre" and is subject to the zoning provisions of the ordinance. The ordinance, however, fails to specify whether the 25 percent figure applies to films containing only isolated depictions of sexual conduct or those distinguished or characterized by an emphasis upon depictions of such conduct. While the ambiguity is troubling, we construe it narrowly as applying only to films which fall within the latter description (*Kuhns* v. *Board of Supervisors* (1982) 128 Cal.App.3d 369, 375 [181 Cal.Rptr. 1]). So doing, we conclude that the challenged language does not so threaten First Amendment rights as to permit a challenge to its clarity by an enterprise such as Adult Books, Inc., which uncontestably falls within its regulatory scope. We accordingly find that appellant lacks standing to challenge the ordinance on vagueness grounds. (*Young, supra*, 427 U.S. at p. 61 [49 L.Ed.2d at pp. 320-321]; *Basiardanes* v. *City of Galveston, supra*, 682 F.2d 1203, 1211-1212; *Castner* v. *City of Oakland* (1982) 129 Cal.App.3d 94, 98 [180 Cal.Rptr. 682]; *Walnut Properties, Inc.* v. *City Council* (1980) 100 Cal.App.3d 1018, 1072 [161 Cal.Rptr. 411].)

Appellant also contends that the ordinance violates its First Amendment rights. ■ The basis of this argument is that the zoning provisions of the ordinance are overly broad in scope and effect and hence unduly restrictive of public access to protected material.[3]

■ It is of course established beyond cavil that the distribution of books or operation of a picture arcade is an activity entitled to First Amendment protection. (*Schad* v. *Mount Ephraim* (1981) 452 U.S. 61, 65 [68 L.Ed.2d 671, 678, 101 S.Ct. 2176]; *People* v. *Glaze* (1980) 27 Cal.3d 841, 846 [166 Cal.Rptr. 859, 614 P.2d 291]; *Osmond* v. *EWAP Inc.* (1984) 153 Cal.App.3d 842, 853 [200 Cal.Rptr. 674].) The fact that such businesses operate to make a profit or may "exhibit pictures which are offensive or lacking in social worth" does not deprive them of First Amendment rights. (*People* v. *Glaze, supra,* 27 Cal.3d at p. 846; see also *Osmond, supra,* 153 Cal.App.3d at p. 843.)

■ Any law which imposes a prior restraint on the exercise of First Amendment rights comes to the court with a "heavy presumption against its constitutional validity." (*Vance* v. *Universal Amusement Co.* (1980) 445 U.S. 308, 317 [63 L.Ed.2d 413, 421, 100 S.Ct. 1156]; *Rosen* v. *Port of Portland* (9th Cir. 1981) 641 F.2d 1243, 1246-1247; *Kuhns* v. *Board of Supervisors, supra,* 128 Cal.App.3d 369, 374.) Freedom of speech enjoys a "preferred position" under the law (*People* v. *Glaze, supra,* 27 Cal.3d 841, 845; *People* v. *Katrinak* (1982) 136 Cal.App.3d 145, 151 [185 Cal.Rptr. 869]). ■ Legislation which is alleged to regulate or infringe upon First Amendment rights will be subjected to closest scrutiny (*Rosen, supra,* 641 F.2d at p. 1246; *City of Whittier* v. *Walnut Properties, Inc.* (1983) 149 Cal.App.3d 633, 641 [197 Cal.Rptr. 127]). And the government has the burden of showing not only that such a law furthers some important or substantial governmental interest unrelated to the suppression of free expression, but also that it is narrowly fashioned to ensure the least possible restriction on First Amendment rights in the protection of the governmental interest. (*United States* v. *O'Brien* (1968) 391 U.S. 367, 377 [20 L.Ed.2d 672, 680, 88 S.Ct. 1673]; *People* v. *Glaze, supra,* 27 Cal.3d at p. 846; *County of Sacramento* v. *Superior Court* (1982) 137 Cal.App.3d 448, 454 [187 Cal.Rptr. 154]; *People* v. *Katrinak, supra,* 136 Cal.App.3d at p. 151; *EWAP, Inc.* v. *City of Los Angeles* (1979) 97 Cal.App.3d 179, 189 [158 Cal.Rptr. 579].) As the court noted in *Schad* v. *Mount Ephraim Hospital, supra,* 452 U.S. 61, at pages 75-76 [68 L.Ed.2d 671, at pages 684-685]: "To be reasonable, time, place, and manner restrictions not only must serve

---

[3]Since appellants are challenging the impact of the ordinance upon their own rights of expression, they have undisputed standing to argue that the ordinance is invalid under the First Amendment. (*Schad* v. *Mount Ephraim, supra,* 452 U.S. 61, 66 [68 L.Ed.2d 671, 678-679]; *Basiardanes* v. *City of Galveston, supra,* 682 F.2d 1203, 1210.)

significant state interests but also must leave open adequate alternative channels of communication." (See also *City of Whittier* v. *Walnut Properties, Inc., supra,* 149 Cal.App.3d 633, 641.)

■ We readily acknowledge the legitimate and substantial concern the City of Vallejo has in protecting the moral aesthetic and commercial quality of its neighborhoods and commerce by restricting "adult" businesses to designated areas. Contained within the ordinance is a finding by respondent city council that the purpose of the new zoning provisions is to "alleviate" the "adverse impact" of "adult theatres and adult bookstores . . . on the tone of commerce in the city generally." (Vallejo Mun. Code, § 16.57.020 Q.)[4] Appellant, however, complains that respondent has failed to show any *factual* basis for its finding or otherwise support its claimed purpose by proof in the record. The law does not require such proof. ■ The justification for zoning laws locating adult businesses in specified areas can be based upon past experience and evidence offered in similar cases. (*Strand Property Corp.* v. *Municipal Court* (1983) 148 Cal.App.3d 882, 887 [200 Cal.Rptr. 47]; *County of Sacramento* v. *Superior Court, supra,* 137 Cal.App.3d 448, 455.) A city's interest in maintaining the quality of its civic life "must be accorded high respect" (*Young* v. *American Mini Theatres, supra,* 427 U.S. 50, 71 [49 L.Ed.2d 310, 327]). ■ Since in our view the assertion of that interest by the City of Vallejo in the present instance is free from motives of censorship or suppression, and is actuated by legitimate concerns over proper city planning, we find in the present record sufficient justification for the challenged regulations. (*Ibid.*; see also *Strand, supra,* 148 Cal.App.3d at p. 887; *County of Sacramento, supra,* 137 Cal.App.3d at p. 455; *Pringle* v. *City of Covina* (1981) 115 Cal.App.3d 151, 162 [171 Cal.Rptr. 251]; *Walnut Properties, Inc.* v. *City Council, supra,* 100 Cal.App.3d 1018, 1023.)

■ It remains for us to examine the effect of the challenged legislation upon freedom of expression. (*Schneider* v. *State* (1939) 308 U.S. 147, 161 [84 L.Ed. 155, 164-165, 60 S.Ct. 146]; *Basiardanes* v. *City of Galveston, supra,* 682 F.2d 1203, 1214; *Strand Property Corp.* v. *Municipal Court, supra,* 148 Cal.App.3d 882, 887.) As we have said, legislation of this character must be narrowly drawn, the test being "whether there are 'less drastic means' available to accomplish the government's purpose." (*People* v. *Glaze, supra,* 27 Cal.3d 841, 847.) "An ordinance must be narrowly di-

---

[4]Section 16.57.020 Q states: "The City council finds that adult bookstores and adult theaters . . . have an adverse impact on the tone of commerce in the city generally. They cause mental distress and anguish to nearby residents; they attract undesirable persons who pose dangers to school children and who interfere with adjoining businesses; adult bookstores, when placed on major thoroughfares, tend to downgrade the image of the City and to make it a less desirable place to work and live."

rected at the evil being attacked if First Amendment activity is involved." (*Id.,* at p. 848.)

In *Young* v. *American Mini Theatres, supra,* 427 U.S. 50, the United States Supreme Court was called upon to determine the constitutionality of a Detroit zoning ordinance which provided that adult movie theatres could not locate within 1,000 feet of any other two regulated uses.[5] The court held that Detroit's zoning ordinance was a legitimate "limitation on the place where adult films may be exhibited," (*id.,* at p. 71 [49 L.Ed.2d at p. 327]), explaining that the "market for this commodity is essentially unrestrained" (*id.,* at p. 62 [49 L.Ed.2d at p. 321]). The plurality opinion acknowledged, however, that "[t]he situation would be quite different if the ordinance had the effect of suppressing, or greatly restricting access to, lawful speech." (*Id.,* at p. 71, fn. 35 [49 L.Ed.2d at p. 327]; see also *Bayside Enterprises, Inc.* v. *Carson* (M.D.Fla. 1978) 450 F.Supp. 696, 701.) The concurring opinion of Mr. Justice Powell[6] focused upon the effect of the legislation, concluding that the impact of the Detroit ordinance was merely "incidental and minimal," not having the "effect of suppressing production of or, to any significant degree, restricting access to adult movies." (*Id.,* at pp. 77-79 [49 L.Ed.2d at pp. 330-331].)

Subsequently, in *Schad* v. *Mount Ephraim, supra,* 452 U.S. 61, the high court struck down a zoning ordinance which had the effect of excluding all nonobscene nude dancing in the Borough of Mount Ephraim. The court there emphasized that legislation regulating free expression "must not only assess the substantiality of the governmental interests asserted but also determine whether those interests could be served by means that would be less intrusive on activity protected by the First Amendment." (*Id.,* at p. 70 [68 L.Ed.2d at p. 681].) Distinguishing *Young* on the ground that the Detroit ordinance "did not affect the number of adult movie theaters that could operate in the city," (*id.,* at p. 71 [68 L.Ed.2d at p. 682]), the court concluded that "[t]he Borough has not established that its interests could not be met by restrictions that are less intrusive on protected forms of expression." (*Id.,* at p. 74 [68 L.Ed.2d at p. 684].)

 Thus, the crucial inquiry here becomes: what impact will the ordinance have upon access to protected expression. Among relevant factors

---

[5] The zoning ordinance was an amendment to an anti-skid row ordinance that had been adopted 10 years earlier by the Detroit Common Council. The amendment added adult businesses to a group of previously regulated uses such as cabarets, hotels, bars, pawn shops, pool halls, public lodging houses, secondhand stores, shoeshine parlors and taxi dance halls. (*Young, supra,* at p. 52 [49 L.Ed.2d at p. 314].)

[6] Since there is no majority without Mr. Justice Powell's vote, his views and criteria must be satisfied if a zoning ordinance is to withstand First Amendment scrutiny, as subsequent cases have acknowledged. (*Avalon Cinema Corp.* v. *Thompson* (8th Cir. 1981) 667 F.2d 659, 662.)

in measuring that impact, the following are significant. First, respondent's ordinance is broad—facially broader than the Detroit zoning law at issue in *Young.* An "adult bookstore" or "adult theatre" is not only prohibited within 1,000 feet of another such regulated use, but must be located within one of three specified zoning districts and cannot operate within 500 feet of numerous other enumerated uses, such as playgrounds, parks, libraries, schools or residential zones. Such zoning and linear distance requirements are rather more restrictive than those prescribed by the Detroit ordinance. (*Bayside Enterprises, Inc.* v. *Carson, supra,* 450 F.Supp. 696.) Moreover, the ordinance has no grandfather clause permitting preexisting nonconforming uses to continue operations, as do most of the valid zoning regulations enacted in the wake of *Young.* (*Avalon Cinema Corp.* v. *Thompson, supra,* 667 F.2d 659, 662; *Purple Onion, Inc.* v. *Jackson, supra,* 511 F.Supp. 1207, 1224.) Here, the ordinance is applicable to all existing businesses, making its impact upon access to protected material more substantial. (*Ibid.*)

Still, the ordinance does not impose an outright ban; "[i]t is a content-neutral regulation of the time, place, and manner of protected speech, not a direct abrogation or infringement of First Amendment rights." (*County of Sacramento* v. *Superior Court, supra,* 137 Cal.App.3d 448, 453; see also *EWAP, Inc.* v. *City of Los Angeles, supra,* 97 Cal.App.3d 179, 188-190.) Permissible locations available to adult uses are restricted by the ordinance, but not legislated out of existence.

While evidence of the impact of the ordinance upon public access to adult theatres and bookstores was disputed, we think respondent established without doubt the existence within the city of reasonably available sites conforming to the zoning and distance requirements of the ordinance for operation of "adult bookstores" and "adult theatres," thereby meeting its burden of demonstrating the absence of a governmental attempt at suppression of First Amendment activity. We are mindful that appellant produced by expert testimony evidence of the considerable economic difficulty of locating "adult" uses at many legally permissible sites within the City of Vallejo. Such evidence, however, falls far short of establishing that appellant is foreclosed or unreasonably restricted by the ordinance from effectively operating within the city limits. The issue is one of degree, and we are satisfied that the limitations based upon prospective relocation are not onerous. We are also convinced that the ordinance will not result in an oppressive and hence unconstitutional restriction of public access to adult material as found, for example, in *Alexander* v. *City of Minneapolis* (D.Minn. 1982) 531 F.Supp 1162, affirmed 698 F.2d 936, and *Purple Onion, Inc.* v. *Jackson, supra,* 511 F.Supp. 1207, cases relied upon by appellant. We accordingly conclude that the ordinance is not so pervasive in its constraints as to violate appellant's First Amendment rights. (*Castner* v.

*City of Oakland, supra,* 129 Cal.App.3d 94, 98; *Walnut Properties, Inc.* v. *City Council, supra,* 100 Cal.App.3d 1018, 1023.)

Appellant's final contention is that the conditional use permit requirements of the ordinance are unconstitutionally broad, vesting excessive discretion in municipal authorities, but this issue has been mooted by an amendment to the ordinance eliminating the permit requirement. We thus decline to consider it. (*Paul* v. *Milk Depots, Inc.* (1964) 62 Cal.2d 129, 132 [41 Cal.Rptr. 468, 396 P.2d 924]; *Consol. etc. Corp.* v. *United A. etc. Workers* (1946) 27 Cal.2d 859, 863 [167 P.2d 725].)

The judgment is affirmed.

Holmdahl, J., concurred.

**RACANELLI, P. J.,** Concurring.—Since it is clear that appellants lack the necessary standing to challenge the ordinance on grounds of vagueness and overbreadth, I do not interpret the majority opinion as having decided that constitutional issue; with that reservation, I join in the result reached by the majority.

A petition for a rehearing was denied May 22, 1985. Racanelli, P. J., was of the opinion that the petition should be granted. Appellants' petition for review by the Supreme Court was denied July 17, 1985.